SACKET
vs.
HOOPER.

━━━━━━

## SACKET vs. HOOPER.

APPEAL FROM THE COURT OF THE SIXTH DISTRICT, THE JUDGE OF THE FIFTH PRESIDING.

A verbal sale, accompanied by delivery of real or immoveable property, and of immediate and continued possession of the vendee, was valid under the laws of Spain, and before the adoption of the civil code, especially of inchoate titles.

In the confirmation of land titles by the United States Land Commissioners, if the sale to the grantee and claimant was not fully-established, the confirmation enured to the benefit of him who held the original or inchoate titles.

The affidavits made to obtain a continuance of a cause, make no part of the allegations which form the *contestatio lites;* so, that disclosures made in them of the existence of a written title or other facts, do not change the legality of parole evidence being introduced without accounting for the loss of the written evidence.

On the 21st of April, 1827, David F. Sacket, of the state of Indiana, commenced this action for the recovery of four hundred arpens of land, being half of eight hundred arpens, situated on the right bank of Bayou Robert, in the parish of Rapides, at a place called the Pascagoula or Indian Old Fields.    The plaintiff claims under title emanating from the

Spanish government, the defendant claims under the same title.

In September 1801, the Spanish commandant granted to Edward McLaughlin his *requête* and permission to settle eight hundred arpens of land on Bayou Robert, in the parish of Rapides. On the 27th of March, 1811, McLaughlin, by private act, conveyed the same land to David F. Sacket, which he confirmed by recognitive act in February, 1818. This constitutes the plaintiff's title. The defendant's title commences with McLaughlin, who sold to one William Wiley, in 1803, but no written act of this conveyance has been found. Wiley settled the land and made improvements on it. In 1806, Wiley sells and conveys to R. King, from whom, through regular conveyances, the defendant derives his title.

In an application for a continuance, the defendant made affidavit, "that a conveyance of the land in dispute, made by Edward McLaughlin to William Wiley, senior, is material and important evidence for him in the trial of this cause, &c." At the next term a similar affidavit was made. Parole evidence was then introduced to show the conveyance could not be found. But it was shown that the commissioners of the land office confirmed the land in question to Wiley, in 1811, on the faith of the *requête* to McLaughlin, and his conveyance to Wiley. Parole evidence was received to show that Wiley bought of McLaughlin and took possession of the land.

*Winn* and *Dunbar*, for the plaintiff.

1. We contend that the certificate of confirmation of the United States Land Commissioners enured to the benefit of McLaughlin, and not to Wiley, as no written title or conveyance is shown to exist, from the former to the latter. 5 *Martin*, 663. 11 *Martin*, 212.

2. The defendant has set forth in various affidavits in this case, a written title from McLaughlin to Wiley, and had commenced his defence with proof to establish its former existence, its loss, contents and genuineness. Having failed in this attempt, he ought not to be permitted afterwards to introduce parole testimony of this sale.

14

*Thomas,* for defendant, relied :

1. On a verbal sale in 1803, from McLaughlin to Wiley, accompanied by proof of the surrender of the *requête* to the vendee (Wiley) ; actual delivery of the land and payment of the price, and a subsequent confirmation by the United States Commissioners, in 1811, to Wiley.

2. We rely on the prescription of ten and twenty years. The record showing that Wiley sold to King, in 1806 ; and that this suit was brought in 1827, more than twenty years having elapsed from the transfer by Wiley in whose favor the United States Commissioners had confirmed the title.

*Mathews, J.* delivered the opinion of the court.

In this case the plaintiff claims title to a tract of land, situated on the Bayou Robert, in the Parish of Rapides, containing four hundred arpens. The answer is made up of a general denial and a plea of prescription, &c.

Judgment was rendered in the court below for the defendant, from which the plaintiff appealed.

It is shown by the evidence of the case, that the title to the land in dispute was confirmed to William Wiley, senior, who made claim to it before the Commissioners of the Land Office for the Western District of Louisiana (then Territory of Orleans). The certificate of confirmation was dated the tenth of May, 1811, and is based on a *requête* and permission to settle, accorded by the proper authority of the Spanish government, to one Edmond or Edward McLaughlin. The claimant, in his notice to the commissioners, sets up title in himself, as derived by purchase from McLaughlin ; and such title as he derived by that purchase has been regularly transmitted to the defendant. The title relied on by the plaintiff is derived directly from McLaughlin, and is evidenced by an authentic act.

From this statement in relation to the different pretensions of the parties, it is evident that their several claims to the disputed premises rest as a first basis on McLaughlin's *requête* and permission to settle. If his claim and right had not been transferred to Wiley, previous to the sale to the plaintiff, or if

WESTERN DIST.
*October*, 1831.

SACKET
*vs.* ·
HOOPER.

the former, or those claiming under him, have not acquired title by prescription in virtue of the various conveyances under which the defendant now claims, the plaintiff must recover. During the argument of the cause, we were inclined to think that the defendant had exhibited title in himself and those from whom he claims, sufficient for the basis of the prescription of ten years. Since then, we have examined carefully the evidence in support of this title, and have come to the conclusion that it not only forms a ground for prescription, but that it is legally valid according to the law in force at the time McLaughlin is alleged to have sold to Wiley. That a verbal sale of real property, accompanied by delivery to, and long possession of the vendee was valid under the laws of Spain, has been already settled by this court in the case of *Sanchez* vs. *Gonzales*, 11 *Martin*, 212. The same point had been decided in the case of *Phillips* vs. *Andre*, 2 *Martin*   , by the Superior Court of the Territory of Orleans. In the present instance nothing has been introduced to show error in those decisions. The only question to be examined is, whether the defendant has proven a sale by parole and delivery of the land now claimed from him to Wiley, from whom he derives title. The testimony of several witnesses establishes this fact; and although the sale was not made directly to the original vendee in person, yet clearly through the agency of Alexander Fulton it was done ; and this part is corroborated by the immediate occupancy and possession of the real purchaser. McLaughlin had acquired under the Spanish government no absolute right in the land on which he had requested and obtained the privilege of settling. His title was wholly imperfect, merely incipient ; and perhaps a transfer of such a right might be legally made with less solemnity (as appears to have been practised by the inhabitants of the country) than was usual in the transfer of complete titles to land from one individual to another.

The certificate of the land commissioners confirms the claim in Wiley, on an allegation of sale from McLaughlin. But unless this sale be established, the confirmation would enure to the benefit of the person having the inchoate title

*A verbal sale, accompanied by delivery of real or immoveable property, and of immediate and continued possession of the vendee, was valid under the laws of Spain, and before the adoption of the civil code, especially of inchoate titles.*

*In the confirmation of land titles by the United States Land Commissioners, if the sale to the grantee and claimant was not fully established, the confirmation enured to the benefit of him who held the original or inchoate titles*

The affidavits made to obtain a continuance of a cause, make no part of the allegations which form the *contestatio lites*; so, that disclosures made in them of the existence of a written title or other facts, do not change the legality of parole evidence being introduced without accounting for the loss of the written evidence.

(as settled by several decisions of this court.) In the present case, we are however of opinion, that it has been established. Admitting that it might legally be proven by parole, it is contended on the part of the appellant, that the affidavits of the defendant show the existence of a written act of sale which is not accounted for; and that consequently he was not authorised by law to introduce inferior evidence. In answer to this objection against the introduction of testimonial proof offered, it may suffice to say, that affidavits of parties to a suit to obtain a continuance, makes no part of the allegations which form a *contestatio litis;* and in relation thereto ought not to be considered as changing the legality of evidence, proper to be adduced.

The land now in contest was never in the actual and corporeal possession of Wiley, McLaughlin's immediate vendee, but as a part of a larger tract bought he had civil possession, which is sufficient to lay a foundation for prescription. This species of possession has been uninterrupted, as appears by the testimony of the cause, from 1803 to 1827, the period when the present action was instituted. It is true that this immense lapse of time, according to our law of prescription, would not give right to the possessor, unless aided by a title translative of property, and good faith. But both these requisites we believe are established by legal evidence. We do not take into consideration the interruption attempted to be proved as a consequence of the small improvement made by the boy, Wade, which seems to have been placed in such a situation on the land, that no person except himself ever saw it. This was not such an open adverse possession as should be allowed to operate against that of the owner.

From this view of the case it is seen that we adhere to the doctrine taught in that of *Sanchez* vs. *Gonzales;* the evidence of title in both being strengthened by long and uninterrupted possession.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.