### ISAAC THOMAS and others *v.* WILLIAM HENRY TURNLEY.

Proof of the signature of the grantor, and of that of one of the subscribing witnesses residing in another State, is sufficient evidence of the execution of a deed *sous seign privé.*

Plaintiff offered in evidence copies of deeds taken from the records of the office of the Parish Judge, on making oath that he had inquired in vain, from all persons who were likely to have any knowledge of the matter, for the originals, which he believed had been lost or destroyed. It was shown that the deeds were more than thirty years old; that the Record of Conveyances had been regularly kept; that it was formerly the practice to give back the originals after they were recorded; and that the Parish Judge and subscribing witnesses were dead. Other circumstances tended to show that the deeds were genuine. *Held*, that the copies were properly admitted.

In controversies between the original grantee of a tract of land, or those claiming directly under him, and one in whose favor, as assignee, the title has been confirmed by the Commissioners of the United States, the certificate in favor of the latter, and the facts recited in it, will not be evidence, but the confirmation will enure to the benefit of the party having the inchoate title. Otherwise, as to third persons showing no title. The Commissioners appointed to decide upon land titles emanating from the former sovereigns of Louisiana, being authorized, by different acts of Congress, to confirm inchoate titles existing at the time of the change of government, in favor of certain grantees, or *their legal representatives*, had authority, *incidentally*, to decide whether one who claimed, not as the original grantee, was entitled to a confirmation; and such confirmation, in favor of an assignee, has been uniformly regarded as entitling the latter to a patent. It is evidence against the government, and though not binding on the original grantee, or those claiming under him, is *prima facie* evidence against the rest of the world.

A petitory action may be maintained against a naked possessor, upon a title which, if accompanied by possession, would be regarded as a just title.

A petitory action may be defeated, by showing that the title is in a third person, or that the latter has a better title than the plaintiff.

Jurors are so far the judges of the law as well as of the facts, that they have a right, in all cases, to find a general verdict. But the court, if not satisfied therewith, may grant a new trial.

APPEAL from the District Court of Catahoula, *Boice*, J.

*McGuire*, for the plaintiffs.

*Brent* and *Dunbar*, for the appellant.

BULLARD, J. The plaintiffs represent that they are the legal and rightful owners of a tract of land fronting on Black river, having Little river or Catahoula bayou for its upper side line, and containing one thousand acres. That they claim said land in virtue of a confirmation by the United States to Charles Miles in 1812, and a chain of mesne conveyances from those under whom they hold, of record in the parish of Catahoula, beginning as far back as 1809. They further state that they, and those under whom they claim, have had the peaceable and uninterrupted possession of said tract, under just titles, translative of property, for more than thirty years; and have, for the whole or a greater part of the time, made the regular payment of taxes thereon, which confers on them title by the prescriptions of ten, twenty, and thirty years. They further allege that, in the year 1837, the defendant Turnley wrongfully and illegally took possession, and that on the 28th of January, 1837, the petitioners sued the said Turnley for the recovery of said tract of land, which suit was continued from time to time until the fall term, 1840, when the plaintiffs took a nonsuit. They ask for judgment against Turnley for the land, and for damages.

The first answer of the defendant was a general denial of the plaintiffs' title. In an amended answer, he avers that he is owner of the land claimed by the plaintiffs, by virtue of a deed of conveyance from John Hébrard, Eugenie Roberts, and Bennet Roberts, the heirs and legal representatives of John Hébrard, deceased, from whom they derive title, dated June 8th, 1835. He further pleads prescription, and claims $5000 for improvements put upon the land.

There was a verdict in favor of the plaintiffs for the land, and allowing to the defendant $2700 for his improvements; and the defendant has appealed from the judgment rendered thereon. The

appellees pray a reversal of the judgment allowing the claim for improvements. The plaintiffs gave in evidence, in support of their title, Commissioners' certificate (B) No. 1754, showing a confirmation, in favor of Charles Miles, of his claim to "a tract of land containing about 1181 $\frac{6}{100}$ *arpens*, equal to 1000 American acres, founded on an uninterrupted occupancy and cultivation by John Hébrard, and others claiming under him, for more than seventeen consecutive years previous to the 20th day of December, 1803, being one moiety of the entire tract, the other half being confirmed to John Henry; the whole claimed under an order of survey for forty *arpens* front, by the depth of forty, on both sides of Little river, bearing date the 22d day of March, 1786, under the signature of Estevan Miro, the Governor of the Province of Louisiana; the authenticity of which order of survey being questionable, the claim is confirmed for a less quantity of land on proof of occupancy as above stated, and the part hereby confirmed to the said Charles Miles having a front of thirty *arpens* on the right bank of Black river, descending said river from *its junction with Little river*, sometimes called Catahoula bayou, to a point at the termination of said thirty *arpens*, whence a line nearly parallel with the general course of Little river, from its mouth up, shall be extended so far as that the quantity of one thousand acres will be included, by running the back line nearly parallel with the general course of Black river, until it shall intersect Little river, and thence down the right bank of Little river, as it meanders, to the beginning."

The plaintiffs further gave in evidence a plat of survey made by order of the Surveyor General, and approved by him, which shows a location of the confirmed claim of Miles, conformable to the calls of the certificate of confirmation.

Charles Miles, in whose favor this tract of land was confirmed, conveyed it to the plaintiffs, or those whom they represent. That deed appears to us sufficiently proved. A witness testified that he was acquainted with Miles, and that he knows his signature, *having seen him write*, and possibly received letters from him, and that the signature to the deed and Commissioner's certificate is his. It is contended that this is insufficient, because the witness does not say that he had seen Miles *write his name*, and because he

does not state how he knows the signature to be genuine. The opposite party might have inquired, on the cross-examination, what were the witness' means of knowing that the signature was genuine. This he has not chosen to do, and we consider his testimony, coupled with proof of the hand-writing of Pope, one of the subscribing witnesses residing in Kentucky, as sufficient to prove the deed under private signature; and that it was properly permitted to go to the jury.

Miles appears to have claimed the land, before the Commissioners, as assignee, and in the right of John Hébrard, and those claiming under him, in virtue of their occupancy and cultivation for many years before the change of government, the other half of the tract being confirmed to John Henry; and at this point in the cause a difficulty arose as to the proof of any such assignment or conveyance. It is certain that the Commissioners regarded Miles as assignee, and it is asserted that Hébrard sold to Henry, and Henry to Miles. The principal controversy relates to these two links in the plaintiffs' title.

Two documents were produced, purporting to be copies from the Record of Deeds in the office of the Parish Judge of the parish of Catahoula, of a deed from John Hébrard to John Henry, selling and conveying all that valuable tract of land on the Black river and the bayou Catahoula, containing about three thousand acres or *arpens*, and bearing date August, 1807, more than thirty-five years ago; and another from Henry to Miles for the same land. It was contended that the originals were not sufficiently accounted for, nor their genuineness established.

Thomas, one of the plaintiffs, laid a ground for the introduction of these copies of acts under private signature from the records of the parish, by making oath that he had made diligent inquiry and search for the original deeds of conveyance, one from John Hébrard to John Henry, and the other from Henry to Miles, and both of record in the Parish Judge's office, from all persons, and at all places where he had any reason to suppose they might be found, if in existence, but without being able to gain any information in relation to them, from which he has just reason to believe that they have been lost or destroyed; that he is convinced that neither Miles, nor any of the plaintiffs, have any knowledge,

of them, but believes that they were lost or destroyed in the Land Office at Opelousas, where he has just reason to believe they were placed by Miles, both from his own information and from other circumstances.

In further support of the deeds, it is shown, that Hébrard instituted a suit against Henry to recover the price of the land, and alleged a sale from himself to Henry, and that he recovered a judgment. It is further shown, to have been formerly the practice to give back originals, after recording or copying them into the records of the Parish Judge's office, and that the record books containing these deeds are regularly kept, and still exist in the office. It is also shown, that the three persons who purport to have signed as subscribing witnesses are dead, as well as the judge of the parish in office at that period. The deposition of the present Register of the Land Office at Opelousas, was also produced, to show that search had been made in his office for the deeds, without success.

The antiquity of these instruments, together with all the other circumstances shown in evidence, such as the death of all the parties and witnesses, the admission of Hébrard in a judicial proceeding, especially when that proceeding is the basis of the title under which the defendant claims to hold the land through a sheriff's sale to Bowie, a relinquishment by Bowie and the heirs of Hébrard, and the sale by those heirs to Turnley, and the fact that the Commissioners recognized Miles as the assignee, satisfy us that the deeds were genuine, and the copies properly admitted. There is nothing to create the slightest suspicion ; and possession seems to have accompanied the deed to Henry, for it is stated by the Commissioners that a part of the land had been confirmed to him.

The deed from Henry to Miles purports to convey a tract of land described as follows : " Beginning at a large sweet gum on the bank of Black river, *at the lower end of a survey containing* 1600 *French acres*, which he purchased of John Hébrard, and running thence north-eastwardly, with the meanders of the river, the distance of 346 poles, for a front line, to a sasafras and pecan on the bank of said river ; and said front line is found to be the course of N. 20 E., thence at right-angles N. 20 W. from each

end of the above front line 465 poles, which is intended to include a survey of 400 superficial *arpens* which said Henry conveyed to James Wallace, the said Wallace having recently transferred the said 400 *arpens* to the above named Charles Miles. The above described lines are to contain 1000 acres, more or less."

This sale does not embrace the land at the confluence of the Black and Little rivers, where the defendant's house is represented to stand. It commences forty *arpens* below that point, and the front is thence up the river 346 poles, and the side lines about forty *arpens* in length. It is clear, then, that the location, by the surveying department, deviates from the description of the land in the act of sale from Henry to Miles ; and that the confirmation by the Commissioners in favor of Miles, was not confined to the land embraced in the deed from Henry, but gave him thirty *arpens* front on the right bank of Black river, descending the river from its junction with Little river.

It appears, therefore, that, although Miles was recognized by the Commissioners as the assignee of those whose settlement right was confirmed, (for it must not be forgotten that Hébrard's order of survey was repudiated by them as spurious,) the plaintiffs have not shown, by other evidence than the certificate itself, that they owned that part of the tract immediately at the junction of the Black and Little rivers. And the question here occurs, how far that recognition by the Commissioners furnishes evidence of title in Miles, so far as the defendant is concerned; and how far he may require the plaintiffs to supply that link in their chain of title ?

. Hébrard had sold all his pretensions to Henry, and consequently the confirmation to Miles, as assignee, could not enure to the benefit of the former, the original grantee. The title set up by the defendant, under the heirs of Hébrard, is not fortified by this circumstance.

But the defendant gave in evidence, to show an outstanding title to a part of the *locus in quo*, an act of sale from Henry to one York, to whose benefit it is contended the confirmation must have enured. This deed bears date Dec. 2, 1809, and purports to convey to York all the land on the east side of the river which Henry had purchased of Hébrard, and " on the west, beginning

at the mouth of the Ouachita and running fifteen acres down, crossing the Catahoula bayou, and running forty acres back, including the ferry," &c.

It is contended that, there being no evidence of any assignment or transfer from York to Miles, the confirmation confers no title upon the latter, so far as an outstanding title in York is shown, and that, consequently, he cannot recover that part of the premises.

In the case of *Sanchez and wife* v. *Gonzales*, 11 Mart. 207, this court held " that the appellant could not be bettered in relation to his title by the certificate of confirmation of the Land Commissioners of the United States, even if admitted to make a part of the facts in the cause : *first*, because the certificate gives no right against individual claims ; and *secondly*, because, &c." The same idea is expressed, in other cases, by saying that the Commissioners' certificates generally amount to no more than a relinquishment on the part of the government. In the case of *Sacket* v. *Hooper*, (3 La. 107,) the plaintiff claimed under a sale from the original grantee, and the confirmation relied on by the defendant was in favor of an assignee, and it was held that the recital in the certificate did not show title as to the supposed assignor. The court said, " the certificate confirms the claim in Wiley, on an allegation of a sale from McLaughlin ; but unless the sale be established, the confirmation enures to the benefit of the person having the inchoate title, as settled by several decisions of this court." 8 Mart. N. S. 331.

It is believed that, in all the cases in which this principle has been recognized by this court, the question arose between the original grantee, or one claiming directly from him, and the person in whose favor the title had been confirmed as assignee. To that extent, nothing can be more clear or better settled. And if the representatives or vendee of York were now suing Miles for the land at the junction of the Ouachita and Little rivers, the certificate in favor of the latter, as assignee, would not make proof against him, and Miles could not make out his title without proving the assignment recited in the certificate. On the contrary, the court held, in the case of *Boatner* v. *Ventress*, (8 Mart. N. S.

657,) that a recital in a patent or certificate of confirmation binds persons showing no title, and is good evidence against them.

The Commissioners appointed to decide upon land titles emanating from the former sovereigns of the province of Louisiana, acted under various laws of Congress, which authorized them to confirm, in favor of certain grantees, or *their legal representatives*, inchoate titles existing at the change of government. They, therefore, had authority, *incidentally*, to decide whether the claimant, who was not himself the original grantee, showed himself entitled to a confirmation; and such confirmations in favor of an assignee, has uniformly, it is believed, been regarded as entitling the assignee to a patent. It is evidence against the government; and although the grantee or settler cannot be concluded by it, we see no good reason why it should not be at least *prima facie* evidence against the rest of the world. In the case now before us, York, and any person claiming to hold under him, would not be bound by the recital in the certificate; but if the decision of the Board in favor of Miles authorized the issuing of a patent, why should a third person avail himself of the absence of proof of an assignment, when York, or his representatives, remain silent? Against any person except York, or his representatives, we think the recognition in the certificate furnishes *prima facie* evidence. If Miles were in possession under that title, we cannot doubt but that it would be a sufficient basis for the ten years' prescription; and we held, in the case of *Bedford* v. *Urqhart*, (8 La. 241,) that a petitory action can be maintained against a naked possessor, upon a title which, if accompanied by possession, would be regarded as a just title.

But it is contended, on the part of the defendant, that, even without setting up any title, he has a right to show an outstanding title, to defeat the action of the plaintiffs, and that the deed to York shows such outstanding title, and presents an insuperable barrier to the plaintiffs' recovery, unless they prove the assignment.

It is true that the plaintiffs must show title in themselves, and it follows that the defendant may defeat their action by showing that the title, which the plaintiffs pretend to own, belongs to another, and that another has a better title. But having

expressed an opinion that the recital in the certificate is *prima facie* evidence in favor of the assignee, we cannot consider the deed to York, *per se*, as evidence of such an outstanding title. The title thus shown must be a legal, subsisting, and a better title than the plaintiffs'. 4 Wash. C. C. R. 171.

The title exhibited by the defendant is clearly *a non domino.* Hébrard, under whose heirs he claims, had sold to Henry, and Henry had sold to Miles and York. At the time of the judgment of Hébrard against Henry, and of the sheriff's sale, Henry had no title, and Bowie acquired none by the sheriff's deed. But, further, Hébrard was the warrantor of Henry, and his heirs never could set up title against his vendee. They are estopped and precluded by the exception of warranty.

This brings us to consider certain bills of exception, taken during the progress of the trial in the District Court.

The defendant prayed the court to charge the jury, that, if they believed from the evidence that Henry, when he made his sale to Miles, had no interest or title to or in the land now in possession of Turnley, he could convey none to Miles, and that the plaintiffs could not recover without title. The judge, however, told the jury, that if Henry had no right to the land then, he could not convey any; but if he had had land, and had sold part or all to another person previously, the sale to Miles would be a title translative of property, and the only person who could take the land from him would be the former vendee of Henry.

In substance the charge was such as was asked, as to the want of title in Henry when he sold to Miles; and, if we understand the import of the whole charge, it was not calculated to mislead the jury to the prejudice of the defendant. The idea which the judge intended to convey, probably was, substantially, what we have above expressed, that York, or his representatives alone, could recover the land from Miles. The most material part of the charge prayed for was given, to wit, that the plaintiffs could not recover without title.

Another bill of exceptions shows that the defendant prayed the court to instruct the jury, that they were the judges of the law and facts. The judge refused to do so in those words, but told them that they were to judge of the facts and the evidence, and should

be governed in their construction of the law by the opinion of the court; that the court was to give them the doctrine of the law applicable to the case; that it was supposed they would be guided by its views; and that they were to judge, exclusively, what facts were proved, and how far the principles of law were applicable, and to draw a conclusion from the law and facts in their verdict; and that in this sense they *were* judges of the law and the facts. This charge might have been more clear, perhaps, by telling the jury that they had a right, in all cases, to find a general verdict; and that the court could grant a new trial if not satisfied with their finding; but the explanation given by the judge was not such as to prevent their doing justice between the parties, as they understood the law and the facts.

The testimony of King was properly admitted; and the payment of taxes was sufficiently proved. Nothing shows that any better evidence was in the power of the party.*

The appellees have prayed that the judgment may be amended in their favor, the jury having given too much for improvements; and because the defendant, being in possession without title, and consequently in bad faith, was not entitled to recover for his improvements.

The jury thought, from the evidence, that the value of the land was enhanced $2700 by the buildings and clearing; and we are not satisfied that justice requires that we should disturb their verdict.

*Judgment affirmed.*

---

* King, who was examined under a commission, testified that, as the agent of Miles, he had paid the taxes. His testimony was objected to, on the ground stated in the bill of exceptions, " that his answer referred to an old account against Miles, which referred to tax receipts marked by letters, which receipts, if in existence, were the best evidence; and that, not having been proved to have been lost, nor in any manner accounted for, no inferior evidence could be received."