## PURVIS et al. *v.* HARMANSON et al.

The *dictum* in *Jewell* v. *Porche*, 2 An. 148, that whatever be the name inserted in the certificate of the board of commissioners of the United States confirming a spanish grant, the confirmation must inure to the benefit of the real owner," was said *arguendo*, and cannot be considered as a precedent. The question was not at issue in that case.

Decision in *Pontalba* v. *Copland*, 3 An. 56, that the Supreme Court of this State must conform its decisions to those of the Supreme Court of the United States, on questions involving the alienation of the public domain, and the interpretation of treaties and acts of Congress, affirmed.

Confirmations of claims by boards of commissioners of the United States organized for the adjusting of land titles, confirmed by Congress, in favor of persons claiming by derivative titles, inure to their own use. It would defeat the whole object of the laws creating such boards, and introduce infinite public mischief, to hold that the commissioners were to act only on original claims, and, by confirming the right of the original owner, place the derivative title under him entirely open between adverse claimants.

No title passed from the crown for lands in the spanish province of Louisiana, by the execution of an order to survey and put the applicant in possession. The applicant became the owner of the land only after the real title, completed with all the formalities prescribed by the spanish regulations, was delivered to him.

PURVIS
v.
HARMANSON.

APPEAL from the District Court of West Feliciana, *Stirling*, J.  *Ratliff* and *Cowgill*, for the plaintiffs.  *Hudson* and *Patterson*, for the appellant. The judgment of the court was pronounced by

ROST, J.  This is a petitory action, for land situated in that portion of the State which was not taken possession of by the United States till some years after the delivery of the colony of Louisiana, under the treaty of cession.  The title of the plaintiffs consists: 1st. of a petition presented by *Juan Say* to *Grandpré*, whom he styles governor of Florida, praying for an order of survey, in order that the petitioner may present himself to the competent authority to obtain the grant; 2d, of the order of survey made thereon by *Grandpré*, on the 24th May, 1806; 3d, of a survey made in conformity with that order; 4th, of a transfer, by authentic act, from *Juan Say* to the plaintiffs, bearing date the 15th May, 1817; 5th, of a certificate of confirmation of the land in favor of *John Maulden*, original claimant *Juan Say*, under the act of congress of the 8th May, 1822; 6th, of an order of survey, directing the land to be surveyed in strict conformity to the original survey, made in 1806.  The defendants' title is based upon a donation claim in favor of *James C. Williams*, confirmed by the same act of congress. The judgment of the court* below was in favor of the plaintiffs, and the defendants appealed.

The appellants contend that the confirmation to *John Maulden* operated to his own use; and that, as the appellees do not pretend to derive title from him, they cannot recover.  They rely for this ground of error on several decisions of the Supreme Court of the United States.  It is argued by their adversaries that, the confirmation of the United States government is only a relinquishment of the title in the government, and leaves it as to individuals as it existed before; and that in all cases where a regular chain of title is not produced, the title inures to the benefit of the original claimant.  Several decisions of our predecessors sustain the position assumed by the appellees.  *Bradley's heirs* v.  *Calvit*, 5 M. 662. *Sanchez* v.  *Gonzales*, 11 M. 287.  *Sackett* v.  *Hooper*, 3 La. 107.

In the case of *Jewell* v.  *Porche*, 2 An. 148, we referred to those decisions, and stated that, whatever be the name inserted in the certificate, the confirmation must inure to the benefit of the real owner.  That question was not at issue in that case, nor was it necessary to decide it; what we said *arguendo* cannot be considered as a precedent.

In the case of *Pontalba et al.* v.  *Copland et al.*, 3 An. 86, the same question came before us in another shape; and, after solemn argument, we came to the conclusion that we could not differ from the Supreme Court of the United States on questions involving the alienation of the public domain, and the interpretation of treaties and acts of congress.

In the case of *Strother*, the Supreme Court of the United States held the following: "There remains but one other point, on which the court gave their opinion in a former case which was then made by the plaintiff's counsel in their argument, and has been strongly urged in this case, that the confirmation of the commissioners inured to the plaintiff's use.  The reasons assigned for this position are, that the only object of the acts of congress being to ascertain what property had been acquired by individuals before the cession, the commissioners were to act only on original claims, and, by confirming the right of the original owner, to leave the derivative right under him entirely open between adverse claimants.  The court were before of opinion that this view of the case could not

---

* The judgment was rendered in accordance with the verdict of a jury.

be sustained; and we are now of opinion that it is inconsistent with all the acts of congress which have organized boards of commissioners for adjusting land titles, the proceedings of the board, and the laws which have confirmed them. It would defeat the whole object of these laws, and introduce infinite public mischief, were we to decide that the confirmations by the commissioners and congress, made expressly to those who claim by derivative title, did not operate to their own use." *Strother* v. *Lucas*, 12 Peters, 458.

PURVIS
*v.*
HARMANSON.

This doctrine is reiterated and affirmed in the cases of *Grignon, lessee* v. *Astor et al*, 2 Howard, 344, and of *Chouteau* v. *Eckhart*, p. 374 of the same volume. In the case of *Marie Nicolle Les Bois* v. *Samuel Bramel*, 4th Howard, 449, the whole subject was reviewed with great care, and we cannot do better than extract that portion of the opinion of the Supreme Court which refers to it:

"It is insisted that the plaintiff had a vested interest to the land confirmed when the United States acquired Louisiana, which is protected by treaty stipulation, and that such right no act of Congress could defeat; that, by the third article of the treaty of 1803 with France, the inhabitants of the ceded territory were to be incorporated into the Union, to be admited to the rights, advantages, and immunities of citizens of the United States, and, in the meantime, they were to be maintained and protected in the free enjoyment of their liberty, property and religion; and this implied that, after their admission, they should be equally protected; and that such would have been the measure of justice applicable to their rights of property by the laws of nations, had the treaty been silent on the subject. On this assumption the plaintiff mainly relies. That it is true in the abstract, is not doubted; but it involves several opposing considerations applicable to her title: 1. Whether such a vested property in the soil existed in *Les Bois*, before the date of the treaty, as bound the government of Spain to perfect, by the execution of a complete title, the first insipient step. 2. Whether the judicial power has any jurisdiction to interfere and enforce such right, supposing it to exist.

"That this government had imposed on it the same duty to perfect the title that rested on Spain before the country was ceded, is not open to question; but this was all the United States were bound to perform. How then, did the plaintiff's claim stand previous to the cession? Her first decree and order of survey bear date in May, 1802, and the survey was made in August, 1803; but there is no evidence that any part of the land was either occupied or cultivated. The lieutenant govornor's decree is in the usual style, and concludes, " *that it is given to serve the interested parties to obtain the concession and title in form from the intendant general, to whom alone corresponds, by royal order, the distributing and granting of all classes of the royal domain.*

" On the 22d of October, 1798, the king of Spain appointed *Morales* intendant general and subdelegate; he kept his office at New Orleans, and he was chrrged with the superintendance and granting of the public domain in the provinces of upper and lower Louisiana, *to the conclusion of all other authority.*

On July 17th, 1799, *Morales* published his regulations to the inferior officers and the people of the provinces, so that ( in his own language ) *all persons who wished to obtain lands may know in what manner they ought to ask for them, and on what conditions lands can be granted and sold ; that those who are in possession without the necessary titles, may know the steps they ought to take to come to an adjustment; that the commandants and subdelegates of the intendency may be informed of what they ought to observe.* 2 White's Recopilacion, 234.

By art. 18, it is declared: Experience proves that, a great number of those

who have asked for land think themselves the legal owners of it; those who have obtained the first decree, by which the surveyor is ordered to measure and put them in possession; others after a survey has been made, have neglected to ask the title for the property; and as like abuses, continuing for a longer time, will augment the confusion and disorder which will necessarily result, we declare that no one of those who have obtained said decrees, notwithstanding in virtue of them the survey has taken place, and that they have been put in possession, can be regarded as owners of land until their real titles are delivered, completed with all the formalities before recited.

"The formalities recited are found in the three preceeding sections, which give precise instructions how the title is to be made out, and where it is to be recorded.

"The whole matter of perfecting the title was referred to the intendant general, and he, and those acting subordinate to him in this respect, were undoubtedly governed by the intendant's regulations. As the king's representative and deputy, he was to judge whether the considerations moving the lieutenant governor were such as warranted the grant; next, whether the conditions had been performed.

"The granting power was in a great degree political, and altogether the exercise of royal authority; and, of course, subject to no supervision, but by the same high authority itself. By the treaty, the United States assumed the same exclusive right to deal with the title in their political and soverign capacity; nor could the courts of justice be permitted to interfere; if they could, and by their decrees complete the title, all power over the subject might have been defeated, not by courts of the Union only, but by the State courts also."

These decisions are conclusive, and we have acted upon them in the case of *Lobdell* v. *Clark, ante* p. 99.

Admitting, for the sake of argument, that the inchoate grant of the plaintiffs was a valid order of survey, the title to the land did not pass under it: it passed by the conformation alone, and, as was held in *Strother's* case, the party in whose name it was made must be considered as the grantee.

The plaintiffs have not made out in themselves such a title as entitles them to recover.

It is therefore ordered, that the judgment in this case be reversed, and that there be judgment in favor of the defendants, with costs in both courts.