ANSLEY LAND CO., Limited, v. H. WESTON LUMBER CO.

(Circuit Court, E. D. Louisiana.  March 16, 1907.)

No. 13,269.

**1. CORPORATIONS—SALES OF LAND—POWER OF PRESIDENT.**

Where it was not shown to be the custom of a corporation to permit its president to make sales of the corporation's lands, without authority of the board of directors, he had no power to sell such lands without a special or general resolution of the board of directors conferring such authority.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 1629.]

**2. SAME—FORGED RESOLUTIONS—VOID DEED.**

Where no resolution of the board of directors of a corporation was ever passed at any time authorizing a sale of the corporation lands by the president, and the corporation's other officers and stockholders knew nothing of a deed to such lands executed by the president, to which was attached an alleged copy of a resolution conferring on the president authority to make the deed, which copy also bore the forged signature of the corporation's secretary, the deed was void.

In Equity.

Dinkelspiel & Hart and T. M. & J. D. Miller, for plaintiff.

Chaffe & Bowers, for defendant.

SAUNDERS, District Judge.  The bill herein demands the cancellation and annulment of a deed of sale of certain real estate belonging to the complainant company executed on November 19, 1903, by M. E. Ansley, president of the company.  It is averred that this deed of sale is signed by M. E. Ansley, as president, and purports to be signed by Charles D. Stuart, as secretary of the complainant company, by virtue of a pretended resolution of the board of directors of the complainant company attached to the act.  It is averred that the signature of the said Stuart, the secretary, is a forgery, and the pretended resolution attached to the act is also a forgery; that no such resolution was ever passed; and that there was no meeting of the stockholders held on the day upon which the resolution purports to have been passed.  It is also averred that the deed of sale was wholly unauthorized, and that no part of the price ever came into the possession of the complainant, and that the complainant did not hear of the execution of this deed until several months after it had been executed, and thereupon this suit was brought.

The answer avers that M. E. Ansley, who executed the deed, was authorized by virtue of his office and by the known custom of the complainant company to make sales of the company's property and to execute acts of sale, without any special resolution of the board of directors.  The evidence was taken by consent out of court, and the case has been submitted without any note of evidence or oral argument or written brief.

The testimony shows that Mr. Weston, as president of the Weston Lumber Company, negotiated for the purchase of the timber on a cer-

tain tract of complainant's land with M. E. Ansley, the president of the complainant company. When the price had been agreed upon, the parties went to Bay St. Louis, the county seat of the county in which the land was situated, to ascertain if the recorded title was in the complainant company. When they did ascertain this fact, they instructed the clerk, Mr. Hoffman, to draw up a deed of sale. Mr. Weston, on behalf of the defendant company, then asked if the land was free from incumbrances, and, having learned that there was a mortgage upon it in favor of Mrs. Ansley, the mother of M. E. Ansley, the president of the company, he informed Mr. Ansley that he must procure a written release of this mortgage from his mother. He then asked for a certified copy of the minutes of the complainant company authorizing Mr. Ansley to make the sale. Mr. Ansley promised to produce this copy as soon as he could return to New Orleans. Thereupon Mr. Weston left the deed with the clerk, and also his check, and the notes of his company to represent the price agreed upon, and instructed the clerk to deliver the check and the notes as soon as Mr. Ansley should produce a copy of the resolution of the company authorizing him to sell and the written release of mortgage from his mother. Mr. Weston says:

"* * * As president, * * * I demanded that he [M. E. Ansley] furnish a certified copy of the minutes, attested by the secretary. I did not know about the laws of Louisiana, and did not know that it would be legal without it, or unless I had it. * * * He [the clerk] prepared it and held it [the deed] until Mr. Ansley could deliver him the certified copy of the minutes and the release from Mrs. Ansley. * * * He was not to deliver the check and notes nor give Mr. Ansley the deed until he produced the resolutions and release. Then he was to give it to him so he could attach it to it and have all signed. * * * Q. And you would not accept the deed without that resolution? A. No, sir; because my company, before our president or vice president is allowed to sign a document of that kind, they are required to have a resolution of the board of directors, and we decided that the same thing would apply in this case. Q. Then, Mr. Weston, you wanted your company to be fully protected in this matter, and you did not consider it received that protection, unless there was a resolution of the board of directors of the Ansley Land Company, Limited? A. No, sir; I did not, and I would not in any other transaction where there was a company concerned. Q. I understood you to say that, after Mr. Hoffman had prepared the deed, Mr. Ansley wanted to sign the deed and close the transaction on the spot, and you said, 'No, this resolution must be obtained'? A. Yes, sir; we were there in the morning about 10 o'clock, and Mr. Hoffman was to draw the deed that day, and he [Mr. Ansley] wanted to sign them either that day or the next morning, and I would not consent to his signing it until he produced this resolution and release from his mother. * * * Q. Do you mean that Mr. Hoffman was instructed by you to retain the deed until he received the resolution? A. Yes, sir; he was to hold the deed until he got this resolution and release from his mother, because if he did not get the resolution there was no use monkeying with it. * * * Q. Then what was your object in keeping the deed until he got these documents? A. The object in holding on to the deed was for Mr. Ansley to produce authority where he could sign it. Q. Then your idea of this transaction was that, until the resolution was presented, there was no contract? A. Because I did not know that Ansley had that authority. Q. Then you wanted Mr. Hoffman to see it? A. Yes, sir. Q. Then your idea was to get the authority first before it was to be signed by Mr. Ansley? A. Yes, sir."

These extracts from Mr. Weston's testimony show that he thoroughly understood the general rule of law to be, as it is, that Mr. Ansley,

merely by virtue of his position as president of the complainant company, had no authority to sell the land or timber belonging to the complainant company. He concluded the bargain with Mr. Ansley under the belief that Mr. Ansley was, or would be, authorized to sell the timber in question by a resolution of the board of directors of the complainant company. Mr. Ansley subsequently left with Mr. Hoffman a resolution which reads as follows:

"Extract from the minutes of a meeting of the board of directors of the Ansley Land Company, Ltd., held this day, November 19, 1903:

"On motion, seconded and carried, it was resolved, that M. E. Ansley, president of this company, be authorized and empowered to sell to the H. Weston Lumber Company, of Logtown, Miss., all the merchantable pine timber owned by the company as per contract this day signed.

"[Signed] Ansley Land Company, Ltd., M. E. Ansley, President. "Attest: [Signed] Charles D. Stuart, Secretary."

It is conclusively shown that no meeting of the board of directors was held in November, 1903, and that no resolution such as that above copied was ever passed at any time, and that the other officers and stockholders of the company knew nothing of the proposed transaction, and the company never received any part of the price. The signature of Charles D. Stuart, secretary, was forged. As soon as the officers of the company learned of the transaction, the Weston Company was notified in writing that the sale had not been authorized, and they were warned not to cut any timber. The sale executed by M. E. Ansley, under the above circumstances, was null. He was not authorized by any special or general resolution of the board of directors, and it is not shown that it was the custom of the company to permit him to make sales of the lands of the company without authority from the board of directors. Merely as president, he had no power to sell the lands of the complainant company. The defendant company has recorded the deed, and its existence on the records casts a cloud upon complainant's title.

The complainant is therefore entitled to a decree declaring the nullity of this deed and ordering its cancellation.