MILLER, Judge pro tem.
This is an appeal by Joseph J. Carona from a judgment rejecting his demands and awarding defendants, Chellie Percy McCallum and Thelma Rounsanville Mc-Callum, the return of $2,000.00 down payment and further ordering the Clerk of Court and Recorder of Mortgages for the Parish of Ascension to cancel and erase from the records of his office the sale with mortgage from Joseph J. Carona and Sadie LeBlanc Carona to Chellie Percy McCallum and Thelma Rounsanville McCallum. Joseph J. Carona filed suit on a note and mortgage and prayed for judgment in the principal sum of $16,000.00 with 6% per annum interest from January 1, 1960 until paid, together with 10% additional on both principal and interest for attorney’s fees, all as provided for in the note signed by the defendants-appellees, and further prayed for judgment in the sum of $562.36 with 8% per annum interest from January 7, 1960 until paid, representing insurance and tax payments made by Joseph J. Carona on said property. Additionally Carona prayed for judgment recognizing his mortgage and privilege on the following described property, to-wit:
A certain tract or parcel of land, together with all buildings and improvements, furnitures and fixtures thereon, situated in Section Four (4) Township Eight (8) South, Range Three (3) East, in the Parish of Ascension, State of Louisiana, in that subdivision known as Idle Rest, and designated on the plan of said subdivision made by A. G. Mundinger, C. E., May 16, 1927, as Tract Number Four (4), measuring one hundred two and 4/10 (102.4) feet front on the Amite River by a depth on the lower line of five hundred fifty-two and 8/10 (552.8) feet and a depth on the upper line of five hundred thirty nine and 4/10 (539.4) feet and having the width on the rear line of one hundred and 45/100 (100.45) feet, the said tract being one hundred (100) feet in width between parallel lines; and being the same property acquired by vendors from the Succession of Rene E. Ort- *700 lieb, and acquired by the late Rene E. Ortlieb on April 25, 1944, as per act of sale recorded in Conveyance Book 81, page 285 of the Conveyance Records of the Parish of Ascension, Louisiana.
Defendants-appellants, Mr. and Mrs. McCallum, in their answer filed in the trial court, resisted Carona’s demands on the grounds that the purported act of sale with mortgage executed by the parties to this suit is null and void in that it fails to qualify either as an authentic act or as an act under private signature and that the note executed in connection with said act is likewise null and void for want of consideration, that the building situated on the property was subject to redhibitory vices in that it was infested with termites and destructive ants, and further that Carona did not in fact possess legal title to the property at the time the act in question was signed.
The facts of the case are not in serious dispute and are as follows:
By deed dated August 31, 1945, Carona purchased the property involved herein from Mrs. Alice R. Ortlieb, Administratrix of the Succession of Rene E. Ortlieb, deceased. In 1949, Carona began the construction of a building on this property which he completed three years later. The property is fronted on the Amite River and Carona used this property for weekend stays and recreational purposes. The McCallums visited this property on several occasions, the last such visit being some two or three years prior to the date they purchased this property. Chellie P. McCallum was employed by the Ethel Corporation and worked out of the Baton Rouge plant. In the latter part of 1957 he was temporarily assigned to California where he remained until July, 1959.
The evidence is not clear as to how the McCallums found out that Carona desired to sell this property, but it is certain that sometime prior to September 27, 1958 Mrs. McCallum telephoned the Caronas and made certain offers to purchase this property. Subsequent to the phone call, but prior to September 27, 1958, McCallum’s son, Cheryl, Jr., inspected the property minutely, sent his parents a detailed floor plan of the property and expressed his enthusiasm for the purchase. On September 27, 1958, Mrs. McCallum mailed the Caro-nas a letter wherein she stated that her husband would not complete his temporary California assignment. in January, 1959 as previously anticipated, and would not return to Louisiana until June of 1959. However, she believed that they would be coming to Louisiana in December, 1958 and the sale could be then signed. Further she proposed that the McCallums, as purchasers, pay $2,000.00 down and $2,000.-00 per annum until the entire purchase price is paid.
On November 1, 1958 the McCallums signed an agreement to purchase wherein they offered to purchase the property of Joe J. Carona hereinbefore described, including home, land and furniture for $18,000.00 on terms of $2,000.00 cash and $2,000.00 each year, credit portion thereon-, to bear 6% per annum interest.
By act of sale with mortgage dated January 2, 1959, Joseph J. Carona and Sadie LeBlanc Carona, sold the property to Chellie Percy McCallum and Thelma Rounsanville McCallum for $18,000.00, $2,000.00 of which was paid and for the balance it is stated that sellers (sic) have executed their promissory note to the order of Joseph J. Carona for $16,000.00, payable in annual installments of $2,000.00 each,, the first installment to be due and payable on or before the 1st day of January, I9601 and one installment to be due and payable on or before the 1st day of each succeeding year thereafter until all are paid, with interest at 6% per annum. The purchasers actually executed the promissory note bearing the same date as the act of sale with mortgage, which note substantially complies with the descriptive identity thereof contained in the act of sale with mortgage. It is obvious however, that the act *701 intended that the purchasers and not the sellers be required to • furnish a note for the credit portion of the sale price.
The act of sale with mortgage was signed by Joseph J. Carona and Sadie LeBlanc Carona as sellers and Lucille Porrier and Elmo E. Lear, as witnesses, in East Baton Rouge Parish, Louisiana, but the evidence does not disclose on what date such signing took place. Said act, the mortgage note, schedule of payments on note, and acknowledgment of said act, mortgage note and schedule of payment, was signed by Chellie Percy McCallum and Thelma R. McCallum, in the presence of F. Silvery, Notary Public, who was the notary before whom the sale and mortgage was purportedly executed, in Contra Costa, California on January 2, 1959. The mortgage note was paraphed for identification with an act of sale with mortgage by N. Cleburn Dalton, Notary Public, in Baton Rouge, Louisiana, said paraph bearing date January 2, 1959. The signatures on the act of sale with mortgage were admitted, without objection, by Joseph J. Carona as seller, Lucille Porrier as witness, Chellie Percy McCallum and Thelma R. McCallum as purchasers and mortgagors, and the signatures on the mortgage note and schedule of payments by the McCallums were also admitted under oath, and without objection. Further, the act of sale with mortgage, the mortgage note and schedule of payments were offered and received in evidence without objection. The act of sale with mortgage and schedule of payments were filed for record in Ascension Parish, Louisiana on January 7, 1959 and were recorded in Conveyance Book 141 folio 153 and Mortgage Book 101 folio 38, of the public records of said Parish.
In the latter part of January, 1959, following these transactions, McCallums’ son and daughter-in-law moved on the premises and made it their home until August, 1959. In early July, 1959, the McCallums returned to Louisiana and also moved on the premises, which they made their home until December, 1959. The McCallums did not pay the 1959 taxes, which they had agreed to pay in the act of sale with mortgage, and Carona was thereby forced to pay $128.66 for taxes and penalty in order to preserve his rights, which right to so pay, Carona was granted by said act of sale with mortgage.
Although they admit that they signed the note, the McCallums contend that the document introduced in evidence is not sufficient to transfer immovable property, that the property was not transferred to them, and that consequently the note executed as part of the purchase price is without consideration and not enforceable. The trial court, with written reasons assigned, stated that he knew of no decisions holding valid a credit sale simply on the ground that it was signed by the parties and he does not desire to be the first to so hold.
We believe that the trial court and the attorney for defendants-appellees are in error in their opinions that a deed signed by both vendors and vendees is not sufficient to transfer title to immovable property. We are convinced that both the codal provisions and the jurisprudence of the State of Louisiana are to the contrary. The pertinent provisions of the LSA-Revisei Civil Code of 1870 provide:
“Art. 2275. Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold.”
“Art. 2440. All sales of immovable-property shall be made by authentic act or under private signature.”
“Art. 2240. All acts may be executed under private signature, except such as-positive laws have ordained to be passed in presence of a notary.”
*702 “Art. 2241. It is not necessary that those acts be written by the contracting parties, provided they be signed by them.”
“Art. 2242. An act under private signature, acknowledged by the party against whom it is adduced, or legally held to be acknowledged, has, between those who have subscribed it, and their heirs and assigns, the same credit as an authentic act.”
"Art. 2244. The person against whom an act under private signature is produced, is obliged formally to avow or disavow his signature.”
From the foregoing it is certain then that all that is required for the transfer of immovable property is that the sale be in writing and that it be signed by the contracting parties. The sufficiency as to form, involving the present act of sale with mortgage, consequently addresses itself solely to the proof of the signatures of the parties. While it is true that an act under private signature is not admissible as authentic evidence to prove title until the signatures thereto are proved, Botto v. Berges, 47 La.Ann. 959, 17 So. 428; Miller v. Wisner, 22 La.Ann. 457; Leibe v. Hebersmith, 39 La.Ann. 1050, 3 So. 283, we do not interpret this rule to mean that the proof of the signature has to be contained in the act itself or in an acknowledgment by the contracting parties taken in legal form before a proper officer. We have no doubt that the customary and better practice in this state is to have the document of sale itself contain the authentic proof of the signatures in order to enable a title researcher to determine from the inspection of the document itself the validity of the signature. However, we know of no law declaring a written act of sale of immovable property signed by the vendors and vendees invalid because authentic proof of the signatures is not made in the instrument itself. To the contrary, the signature to the private act may be proved in open court, the same as any other relevant fact, and when the act is produced in court the parties are obliged to formally avow or disavow their signatures. This has always been the law in this State as shown by the following quote from Thomas v. Turnley, 3 Rob. 206 :
“Charles Miles, in whose favor this tract of land was confirmed, conveyed it to the plaintiffs, or those whom they represent. That deed appears to us sufficiently proved. A witness testified that he was acquainted with Miles, and that he knows his signature, having seen him write, and possibly received letters from him, and that the signature to the deed and commissioner’s certificate is his. It is contended that this is insufficient, because the witness does not say that he had seen Miles write his name, and because he does not state how he knows the signature to be genuine. * * * we consider his testimony, coupled with proof of the handwriting of Pope, one of the subscribing witnesses residing in Kentucky, as sufficient to prove the deed under private signature; and that it was properly permitted to go to the jury.”
See also Robertson v. Lucas, 1 Mart. (N.S.) 187 where the court held that the maker of a deed is the best witness to prove its execution.
We are of the opinion therefore that even though the McCallums could have objected to the introduction of the act of sale with mortgage prior to proof being made of the signatures thereto, that this document was properly admitted after the proof of the signatures had been made in open court and that the provisions thereof are valid and binding upon the parties to this instrument.
Likewise we are of the opinion that the act of sale with mortgage was sufficient to grant Carona a mortgage on the property in order to secure the unpaid portion of the purchase price. In Schutzman v. Dobrowolski, 191 La. 791, 186 So. 338, p. 341 the court held:
“It is well settled that between the parties it is not necessary to record' *703 either the mortgage or vendor’s lien and privilege.”
Also in Gallagher v. Conner, 138 La. 633, 70 So. 539, p. 544:
“A further defense urged against this note is that the mortgage act with which it is identified is not authentic; it not having been passed in the presence of two witnesses. This nonau-thenticity can make no difference, since a mortgage may be validly consented by act under private signature (C.C. art. 3305), and may be validly recorded without previous acknowledgment of signature.”
We are concerned about the problem that will be presented when the mortgage note is presented to the recorder of mortgages of Ascension Parish, in order to obtain the cancellation of the vendor’s lien and special mortgage granted on this property. Without doubt this note is not properly identified with the act of sale with mortgage, and since the recorder of mortgages is not a party to this suit he cannot be made to respond to our decision herein. However, the record contains ample proof of the identity of this mortgage note with the act of sale with mortgage and will be available in Ascension Parish to prove the identity of this note when the time comes to cancel this mortgage.
For the foregoing reasons we hold that the act of sale with mortgage dated January 2, 1959, signed by Joseph J. Carona and Sadie LeBlanc Carona as vendors and by Chellie Percy McCallum and Thelma Roun-sanville McCallum as vendees and mortgagors is valid and sufficient both as a sale of immovable property and as an act of mortgage.
We must next consider the remaining two defenses, to-wit, redhibition and lack of legal title in Cafona at the time the sale was consummated. From the evidence we are convinced that little if any damage has been done to the buildings because of termite infestation. The building is still suitable for the purpose for which it was purchased and at best, only a diminution in the price could be awarded to plaintiffs. However, no evidence was introduced showing what it would cost to repair such damages, if any, as may have been occasioned by this infestation and we must consequently deny any recovery therefor.
In support of their contention that Carona did not have legal title to the property involved in this litigation when he sold it to them, defendants-appellees introduced the following deeds in evidence:
1. Cash sale, Adolph Dixon to Claude J. Favrot and James C. Clem dated March 30, 1932, and recorded in C.O.B. 72, folio 195 of Ascension Parish.
2. Tax sale, Clause J. Favrot et al to the State of Louisiana for unpaid taxes for the year 1933, dated November 24, 1934, and recorded in C.O.B. 73, folio 457 of Ascension Parish.
3. Cash sale, Claude J. Favrot to M. J. Rathbone dated June 19, 1935 and recorded in C.O.B. 74, folio 96 of Ascension Parish.
4. Sheriff’s sale under writ of fieri facias, undivided interest of James C. Clem to Claude J. Favrot, dated June 25, 1935 and recorded in C.O.B. 74, folio 69 of Ascension Parish.
5. Cash sale, Monroe J. Rathbone to John L. Lee dated June 25, 1937 and recorded in C.O.B. 75, folio 355 of Ascension Parish.
6. Cash sale, John L. Lee to Laissez Faire Club, Inc., dated April 13, 1938 and recorded in C.O.B. 76, folio 154 of Ascension Parish.
7. Cash sale, John L. Lee, President, and Russell A. Wasson, Secretary-treasurer, of the Laissez Faire Club, Inc., to Rene E. Ortlieb, dated April 25, 1944 and recorded in C.O.B. 81, folio 285 of Ascension Parish.
*704 8. Cash sale, Mrs. Alice R. Ortlieb, Administratrix to Joseph J. Carona, dated August 31, 1945 and recorded in C.O.B. 85, folio 331 of Ascension Parish.
9. Certificate of redemption, State of Louisiana to Claude J. Favrot, dated September 7, 1946 and recorded in C. O.B. 85, folio 331 of Ascension Parish.
10. Tax sale, Claude J. Favrot to Malcolm J. Dugas, dated May 18, 1948 and recorded in C.O.B. 88, folio 99 of Ascension Parish.
11. Tax sale, Claude J. Favrot to Muncy Dixon, dated May 24, 1954 and recorded in C.O.B. 101, folio 241 of Ascension Parish.
Able counsel for defendants-appellees argues that there are three defects shown by the aforementioned documents which defeat Carona’s title. We shall set out and pass upon these alleged defects separately.
“Defect No. 1. The property was sold to the State of Louisiana for unpaid taxes for the year 1933 on November 24, 1934. Title to the property was thus vested in the State of Louisiana at the time of the execution of the sheriff’s deed under a writ of fieri facias on June 25, 1935.” In support of this contention counsel relies on LSA-Civil Code Article 2452; Taylor v. General Gas Corp., La.App., 87 So.2d 220; Guidry v. Sigler, La.App., 21 So.2d 232; Greco v. Fedele, La.App., 4 So.2d 75, and Magnolia Petroleum Co. v. Keller, La.App., 22 So.2d 65. The basis for this contention is the rule that the sale of a thing belonging to another is null.
We agree that the sheriff’s sale of June 25, 1935 did not divest the State of any rights it had acquired in the property by virtue of the tax sale of November 24, 1934. Moreover, we are convinced that after the time for redemption had expired, had the State transferred the property to a third •person, then counsel’s contention would be ■correct. We cannot agree, however, that the sheriff’s sale of June 25, 1935 did not convey any rights to Favrot and was in fact a nullity. This deed specifically conveys all of the rights and titles which the said James C. Clem had in said property to Claude J. Favrot. One of the rights which Clem still had in said property was the absolute right of redemption by paying the taxes and penalties. This right was acquired by Favrot in the sheriff’s sale.
Of the authorities relied on by defense counsel in support of this contention only two, Greco v. Fedele, supra, and Guidry v. Sigler, supra, are in any way analogous to the present case. In the Greco case the State had transferred the property acquired at tax sale to a third person prior to the institution of the action for a recision of the sale on the grounds that seller did not possess legal title. It is distinguished from this case for the reason that here the State has returned the property to the tax debtor.
In the Guidry case, plaintiff, Guidry sued for the recision of a city marshall’s sale of property under writ of fieri facias which sale was made in February, 1933. This property had been adjudicated to the State for the nonpayment of taxes on August 5, 1931. At the time of the city marshall’s sale, Article 10, Section 11 of the Constitution provided that the tax debtor had a period of one year from date of the adjudication to redeem the property. Guidry redeemed the property from the state subsequent to the date of the marshall’s sale. This court in a per curiam opinion held at 21 So.2d.233:
“An attempted sale of property under execution where the property has been adjudicated to the state for the nonpayment of taxes and after the time for redemption has expired can confer no right or title in the purchaser at such sale.”
In arriving at this holding we there reasoned:
“Had Sigler acquired a right from plaintiff to or against the property be *705 fore the absolute title became vested in the state by the expiration of the redemptive period, such as by a deed from plaintiff, then this right would have inured to the benefit of Sigler when plaintiff redeemed the property, and the redemption would have related back to perfect the title conveyed by the deed.”
We believe this reasoning is sound. LSA-R.S. 47:2224 allows any person interested in property adjudicated to the State for the nonpayment of taxes to redeem this property from the State as long as the title thereto is in the State. Since Favrot had acquired Clem’s right of redemption to this property prior to the expiration of the redemptive period, the redemption dated September 7, 1946 inured to the benefit of Favrot, and under the doctrine of after acquired title, inured to the benefit of Favrot’s successors in title. See Jackson v. United Gas Public Service Co., 196 La. 1, 198 So. 633. We find no merit in defense counsel’s objection designated as defect No. 1.
“Defect No. 2. On April 13, 1938, John L. Lee conveyed the subject property to the Laissez Faire Club, Inc. The next link in the plaintiff’s chain of title is a sale dated April 25, 1944, from John L. Lee, President, and Russell A. Wasson, Secretary-treasurer, both residents of the Parish of East Baton Rouge, Louisiana, with the authority to act for Laissez Faire Club, Inc., and domiciled in the Parish of Ascension, Louisiana, to Rene E. Ortlieb. The sale is signed simply ‘Russell A. Wasson’ and ‘J. L. Lee’ without any indication above or below the ' signatures that they are acting for the Laissez Faire Club, Inc. The sale is not signed at all by Rene E. Ortlieb. There is no resolution or extract of minutes or any other indication that Wasson and Lee were authorized to act for Laissez Faire Club, Inc., other than their own unsupported statement that they have ‘the authority to act for Laissez Faire Club, Inc.’ ” In support of this contention, able defense counsel cites Snell v. Amite Oil Co., 178 La. 176, 151 So. 70 and Buckley v. Woodlawn Development Corp., 233 La. 662, 98 So.2d 92 to show that the officers of a corporation need the authority from the board of directors of the corporation in order to bind the corporation, and Ansley Land Co. v. H. Weston Lumber Co., D.C.La. 1907, 152 F. 841 as authority that the power to sell must be express and special.
We find no merit in this contention. The deed recites that the corporate officials were duly authorized to act for the corporation in said sale and we must presume they were so authorized, in the absence of a showing to the contrary. Counsel cites no law requiring the recordation of the resolution of the board of directors authorizing the officers to sell the property. The record is entirely devoid of any evidence tending to show that the board of directors of the Laissez Faire Club, Inc., did not adopt a resolution authorizing its officers to sell this property or that the corporation did not ratify the act of its officers after the sale. In the absence of such evidence and in view of the fact that this deed has been a part of the public records of Ascension Parish for 17 years without anyone having questioned the authority of the corporation offi7 cers, we cannot hold that this defect would defeat Carona’s title in this suit.
“Defect No. 3. Two persons other than the plaintiff have record titles to the property sought to be conveyed to defendants, and claim the ownership thereof. As noted earlier, the property was originally sold to the State of Louisiana for unpaid taxes on November 24, 1934, in the name Clame Favrot et al., and was subsequently redeemed in the name of Claude J. Favrot on September 7, 1946. Thereafter, on May 18, 1948, the property was sold for unpaid taxes for the year 1947 to Malcolm J. Dugas. In spite of this sale, the property was again sold on May 24, 1954, for unpaid taxes for the year 1953, to Muncy Dixon. Both of these tax sales are duly recorded in the conveyance records, and neither has been *706 cancelled. Furthermore, the five year prescriptive period for attacking the validity of tax sales has elapsed in eaah case.”
Both of these tax sales named Clause J. Favrot as the tax debtor. At the trial counsel for plaintiff called as a witness Mr. George Blum, attorney at law from Ascension Parish, who testified that Muncy Dixon, prior to his death, consulted him about the validity of his tax title. That he, Mr. Blum, made a title search and found that from 1947 to 1958 the property was assessed to Joseph J. Carona who paid the taxes. That at the same time the property was assessed to Clause J. Favrot in whose name the tax sale to Mr. Dixon was made. That on the strength of this research he advised Mr. Dixon the tax sale was based on a dual assessment and he did not have a title. This witness further testified that he and his law partner did curative work on this title for a law firm in Baton Rouge, and that in 1958, he was of the opinion that Joseph J. Carona had good title to the property.
Mr. Louis LeBlanc, deputy assessor for Ascension Parish also testified that he made a search of the tax records and assessments pertaining to this property, and found that in 1948 there was a tax sale to Malcolm Dugas for the taxes of 1947. He found that there was a dual assessment of that property, in the name of Favrot and Carona. He further found a dual assessment in the name of Favrot and Carona for the year 1953, and stated that Carona paid the taxes for both 1947 and 1953.
Malcolm Dugas, the tax purchaser on May 18, 1948 also testified and stated that he claims no title to this property by virtue of said tax sale.
Since the taxes were paid for the years 1947 and 1953 by Joseph J. Carona, the tax sales of 1948 and 1954 were null. Article 10, Section 11 of the Louisiana Constitution of 1921, LSA. These sales being void they pose no eviction threat to defendants-appel-lees and we consequently find no merits to the contention designated as defect No. 3.
As stated previously in this opinion plaintiff originally sought to recover $562.36 for insurance premiums and tax payments paid by him. Plaintiff failed to prove any amount paid for insurance premiums but he did prove the payment of $128.66 for the 1959 taxes.
For the foregoing reasons, the judgment of the lower court is reversed and set aside and it is now:
ORDERED, ADJUDGED and DECREED that judgment be rendered in favor of plaintiff-appellant, Joseph J. Carona, and against defendants-appellees, Chellie Percy McCallum and Thelma Rounsanville Mc-Callum in the full sum of $16,000.00, with interest at the rate of 6% per annum from January 1, 1960 until paid, together with 10% additional on both principal and interest for attorney fees, and further judgment in favor of plaintiff-appellant and against defendants-appellees, in the sum of $128.66 with irterest at the rate of 8% per annum from January 27, 1960 until paid.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that plaintiff-appellant’s mortgage and privilege against the property described in this opinion be recognized and enforced. All court costs incurred in the trial court and in this court are to be paid by the plaintiff-appellant.
Reversed and rendered.